IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00352-MR

| | |
|---|---|
| TAMMI JONES, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 11].

**I.    BACKGROUND**

On January 19, 2017, the Plaintiff, Tammi Jones ("Plaintiff"), filed an application for supplemental security income under Title XVI of the Social Security Act (the "Act"), alleging an onset date of March 27, 2016. [Transcript ("T") at 59-60]. The Plaintiff's claims were initially denied on May 18, 2017, [id. at 125], and again denied upon reconsideration on July 31, 2017, [id. at 135]. On the Plaintiff's request, a hearing was held on March 18, 2019 before an Administrative Law Judge ("ALJ"). [Id. at 15]. At the hearing, the Plaintiff,

through a representative, amended her alleged onset date to January 6, 2017. [Id.]. On April 23, 2019, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 15-25].

On April 23, 2020, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139

2

Case 3:20-cv-00352-MR    Document 15    Filed 07/25/22    Page 2 of 18

S. Ct. 1148, 1154 (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Clovin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional

3

investigation and explanation." Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

### III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to

4

step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At

5

step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff did not engage in substantial gainful activity from January 6, 2017, her amended alleged onset date. [T. at 17]. At step two, the ALJ found that the Plaintiff had the following severe impairments: "degenerative disc disease, bipolar disorder, depression, and anxiety." [Id.]. At step three, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 18]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, had the RFC:

> [T]o perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant: can

> frequently push and pull with the bilateral lower extremities; can occasionally climb; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; can understand, remember, and carry out simple instructions, but not necessarily simple, routine, repetitive tasks, meaning an SVP of 3 or less; can maintain attention and concentration for at least two hour periods of time sufficient to carry out simple tasks in a normal work day and work week; can adapt to routine workplace changes at a non-production pace; and can occasionally interact with the general public.

[Id. at 20].

At step four, the ALJ identified the Plaintiff's past relevant work as licensed practical nurse. [Id. at 23]. The ALJ determined, however, that the Plaintiff was "unable to perform past relevant work as actually or generally performed." [Id. at 24]. At step five, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff was able to perform other jobs existing in significant numbers in the national economy, including small parts assembler, electronics worker, laundry folder, charge account clerk, document preparer, and check weigher.[1] [Id. at 24-25]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by

---

[1] According to the ALJ, the occupations of charge account clerk, document preparer, and check weigher are sedentary occupations that "apply to the period prior to the [Plaintiff] attaining age 50 in January 2019." [Id. at 25].

7

the Act from January 6, 2017, the amended alleged onset date, through April 23, 2019, the date of the ALJ's decision. [Id. at 25].

## V. DISCUSSION[2]

As one of her assignments of error, the Plaintiff argues that the ALJ "erred in failing to account for, or explain the reason for excluding, any limitation in interacting with supervisors and co-workers" in the Plaintiff's RFC. [Doc. 10 at 9-10].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[3] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions,

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[3] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing, or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based in whole or in part on mental health impairments, the Social Security Rules and Regulations require an in-depth review and analysis of the plaintiff's mental health history. The Regulations set forth a mechanism for this type of review and documentation, known as the "special technique" to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8p; see also 20 C.F.R. § 404.1520a(b). The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p. Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning. "These criteria represent the areas of mental functioning a person uses in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The Paragraph B criteria include the following: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. The ALJ uses the special technique to "evaluate the severity of mental

9

Case 3:20-cv-00352-MR   Document 15   Filed 07/25/22   Page 9 of 18

impairments . . . when Part A of the Listing of Impairments is used." 20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s) … If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b)(1).

Further, Rule 96-8p provides that:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at step 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p also explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to

> perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertion levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, at step three, the ALJ decided that the Plaintiff's mental impairments did not meet or medically equal the "Paragraph B" criteria in listing 12.04 (depressive, bipolar and related disorders) or listing 12.06 (anxiety and obsessive-compulsive disorders). [T. at 18]. The ALJ found at step three that the Plaintiff suffers from moderate limitations in understanding remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence or pace; and moderate limitations in adapting or managing oneself. [Id. at 19]. With regard to interacting with others, the ALJ stated that:

> [T]he claimant alleged that she has difficulty engaging in social activities, getting along with others, and spending time in crowds. However, according to her statements, the claimant is also able to get along with others, shop, spend time with friends and family. Finally, the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with staff, and appeared comfortable during appointments. (Exhibit 3E; 4E; 6E; 7F; 8F; 9F; 10F; Hearing Testimony).

[T. at 19]. The ALJ then noted that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[Id. at 20]. It appears the ALJ sought to account for the Plaintiff's "moderate limitations" in the four areas of mental functioning by finding in the RFC that the Plaintiff:

> [C]an understand, remember, and carry out simple instructions, but not necessarily simple, routine, repetitive tasks, meaning an SVP of 3 or less; can maintain attention and concentration for at least two hour periods of time sufficient to carry out simple tasks in a normal work day and work week; can adapt to routine workplace changes at a non-production pace; and can occasionally interact with the general public.

[Id.]. The ALJ did not, however, include any limitation in the Plaintiff's ability to interact with supervisors and coworkers.

In formulating the Plaintiff's mental RFC, the ALJ cited certain evidence of the record, but the ALJ failed to describe "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p;

12

Mascio, 780 F.3d at 636. Regarding the Plaintiff's mental impairments, the ALJ stated in her RFC assessment that the Plaintiff:

> [O]ccasionally presented with poor or anxious mood/affect. (Exhibits 8F/7; 10F/4). However, typically she had appropriate mood, bright affect, and was described as stable and cooperative. (Exhibits 8F/1, 5; 10F/1; 9F/12, 66, 111, 175, 232, 286, 335, 391). She also was noted to not have any manic symptoms and reported feeling well. (Exhibits 8F/1, 7; 10F/1, 3). Her speech showed occasional prolonged latencies and slightly circumstantial thought content, but she was easily redirected. (Exhibits 8F/1, 4, 7; 10F/1, 3, 5). Otherwise, she was typically oriented, with normal speech, and intact judgment and insight. (Exhibits 8F/2, 5, 8; 10F/1, 4, 6; 9F/12, 66, 111, 175, 232, 286, 335, 391). She had good grooming and hygiene at exams. (Exhibits 8F/1, 4, 7; 10F/1, 3, 5). Finally, her recent and remote memory was intact and her concentration was noted to be improving on medication. (Exhibits 8F/1; 10F/3; 9F/12, 66, 111, 175, 232, 286, 335).
>
> Despite the claimant's impairments, she has been able to maintain a fairly active lifestyle. The record indicates she goes to her mother's house most days. (Exhibits 8F/4, 7). She travels to the coast at times. (Exhibit 8F/4). Also, she takes care of her nine-year-old niece in the evenings. (Exhibit 8F/7). She can bathe and dress herself, feed herself, drive, read, cross stitch and other crafts, cook occasionally, go shopping, do laundry, wash dishes, manage her finances, and do some cleaning. (Exhibits 7F; 4E; 6E; Hearing Testimony).

13

Case 3:20-cv-00352-MR   Document 15   Filed 07/25/22   Page 13 of 18

[T. at 22]. The ALJ also gave significant weight to the opinions of state agency doctors Vigita Reddy, Psy.D., and Darolyn Hilts, Ph.D. [T. at 22-23]. The ALJ stated:

> Dr. Reddy reviewed the claimant's mental health records and determined she could perform simple, routine, repetitive tasks in a low production, low stress work setting *with limited contact with the general public.* This is given significant weight. Although many of the referenced treatment records are prior to the amended alleged onset date, the undersigned has reviewed the evidence in the light most favorable to the claimant and provided mental limitations to the RFC consistent with Dr. Reddy's determination.
>
> Dr. Hilts reviewed the claimant's mental health records and also determined she could perform simple, routine, repetitive tasks in a low production, low stress work setting *with limited contact with the general public.* This is given significant weight. It is supported by and consistent with the record viewed in the light most favorable to the claimant. The evidence supports finding that her mental conditions merit restrictions but are not so severe as to preclude all work.

[T. at 23] (emphasis added).

Here, the ALJ recited evidence in the record and the opinions of state agency doctors that appear to both support and contradict the ALJ's findings that the Plaintiff has moderate limitations associated with her mental impairments, including moderate limitations in interacting with others. However, the ALJ never reconciled this disparate evidence or explained how

14

the evidence supports her conclusion in the RFC that the Plaintiff "can occasionally interact with the general public" but simultaneously requires no limitation in interacting with supervisors and coworkers.

"While the ALJ is not required to include a corresponding restriction to address interactions with each category of individuals—coworkers, supervisors, and the public—in her RFC determination . . . the burden is on the ALJ to make findings of fact and resolve evidentiary conflicts." Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019) (internal citations omitted) (remanding the ALJ's determination where the ALJ found that the Plaintiff had a "moderate limitation" in "interacting with others," limited the Plaintiff to "occasional public contact" in the RFC, and failed to explain why the RFC also excluded any limitation on interacting with supervisors and coworkers); see also Russell v. Colvin, No. 1:14-cv-00203-MR-DLH, 2015 WL 3766228, at *4 (W.D.N.C. June 6, 2015) ("Although the ALJ's findings at step two and three may not require an RFC that imposes limitations on social functioning, the ALJ must at least provide a sufficient explanation in the decision to allow this Court to determine why no limitations as to social functioning were included in the RFC despite the ALJ's finding that Plaintiff has moderate difficulties in social functioning."); Ashcraft v. Colvin, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015)

15

("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain concentration, persistence or pace and such limitations are unaccounted for in the RFC, or their absence is unexplained in the analysis surrounding the ALJ's RFC determination, remand is required."). Here, however, the Court is left to speculate at how the ALJ concluded that the Plaintiff could only "occasionally interact with the general public" but has no limitations in interacting with supervisors and coworkers.

The ALJ's decision is "sorely lacking in the analysis" necessary for the Court to meaningfully review the ALJ's conclusions. Mascio, 780 F.3d at 636-37. While the ALJ recited certain evidence in the record, "it is not sufficient for an ALJ to simply recite *what* the evidence is." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion . . . ." Mascio, 780 F.3d at 636 (quoting SSR 96-8p).

A "reviewing court cannot be left to guess as to how the ALJ arrived at his conclusions." Mills, 2017 WL 957542, at *4. As such, this matter must

be remanded because the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion."  Monroe, 826 F.3d at 189.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling.  See Radford, 734 F.3d at 295.  On remand, the ALJ's decision should include a narrative discussion of the evidence, as required by SSR 96-8p, explaining how she reconciled that evidence (both supportive and contradictory) to her conclusions.  In light of this decision, the Plaintiff's other assignment of error need not be addressed at this time but may be addressed on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 11] is **DENIED.**  Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.  A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.** Signed: July 24, 2022

Martin Reidinger
Chief United States District Judge